Emmett J. Schnepp, J.
Plaintiffs seek a permanent injuetion restraining defendant board from using the Prospect Avenue Elementary School of the district, upon the ground that it is inadequate, unsafe and unsuitable, and from executing and implementing a “ modified Princeton Plan ” as adopted by the board on July 3,1968.
*949 There is no substantial dispute with respect to the basic facts before the court. There are four elementary schools in the district, namely: West, High, North and Prospect. Prior to the adoption of the above plan, the district had three elementary school attendance zones, consisting of Prospect Avenue and North Street, and the West-High complex, in which two schools about one block apart had been combined to form one attendance zone. Under the plan the North-Prospect complex, combining such school attendance zones was established. Further, the board modified the former attendance areas so that some students formerly going to the West-High complex are now in the North-Prospect complex and vice versa. The school grades in the West-High complex will remain the same as before the adoption of the plan, that is, one school will house kindergarten through grade five, plus special education classes for the entire school district, and the second school will house the remainder of grade five and grade six.
The North and Prospect schools are approximately one-half mile apart and, before the adoption of the above plan, both of these individual schools housed grades from kindergarten through the grade six. Under the new plan, for the North-Prospect complex, the separate kindergartens will remain in both schools. However, all children in such attendance zone in grades four, five and six will attend the Prospect Avenue School and all children in grades one, two and three will attend the North Street School. All children residing more than nine-tenths of a mile from the respective schools are bused.
This plan was adopted by the board following various studies and after giving consideration to the directives of James E. Allen, Commissioner of Education, and policy statements of the Board of Regents of the State of New York respecting racial imbalance. By January, 1967, these studies showed that only the Prospect Avenue School was in racial imbalance within the Allen definition, with a 57% nonwhite enrollment.
The New York State pupil evaluation program statistical summary for the fall of 1965 reflected that the performance of Geneva’s pupils is about the same as pupils from communities of comparable size, except for the Prospect Avenue School, which shows a larger percent of low achievers. In the first grade at the Prospect Avenue School, almost 50% of the pupils scored lower than 20% of the norm group, the reason therefor being stated, that the pupils are unprepared for a traditional program of instruction. The scores of pupils at this school attending grade three, ranged moderately low. In this connection it was pointed out that over one third of the pupils *950 are repeaters, sometime during the primary grades. In grade six at this school, no pupil achieved in the upper range in reading and only 4% achieved in the upper group in arithmetic. Conversely, about 45% obtained scores in these subjects, which were as low as those obtained by the lowest 20% of children in the norm group, which includes the other grade six children in the district.
The district has evolved plans for a building program to meet its future needs, which among other things, would change the Prospect Avenue School, from school to administration uses. However,, this building plan is some years away and involves the approval of the district voters. An effort was made to meet the educational needs of the pupils at the Prospect Avenue School by teacher aids, reduction of' class size, and other approaches. The board determined that these measures did not solve such educational problems and that the matter of underachievement and racial imbalance at Prospect Avenue and overcrowding at the remaining elementary schools could not wait for the completion and district approval of the proposed building program. Although it is claimed that the board did not get the community views, the motion papers reflect that studies were made and various proposals considered by the board and many meetings were held with groups and individuals concerned with the problem, before the plan was adopted.
Under the new plan, the total enrollment in the West-High complex was reduced, with the number of nonwhites showing a slight increase. In the Prospect School, the total enrollment was increased from 240 to 317, with the number of nonwhites reduced from 139 to 51. In the North School the total enrollment was increased to 440 from 422 and the number of nonwhites attending, rose from 21 to 88.
Petitioners claim, among other things, that the plan is involuntary and limited to the North and Prospect Schools, and accordingly is discriminatory and unconstitutional. The residents of this complex, it is argued, are denied equal protection of the laws, as guaranteed by the 14th Amendment, because one half of the district residents are required to send elementary children to a school they would not otherwise attend, and the remaining one half of the district residents are exempt from such plan. It is also claimed that not only is additional busing required, but that the plan exposes the pupils involved to inconvenience and additional danger.
The complaint in the within action requests injunctive relief. Plaintiffs, in essence, however, seek to review and annul the *951 action of the defendant Board of Education. An article 78 proceeding should have been utilized for this purpose. Under the liberal provisions of the new OPLR, the court may treat the within action as a proceeding in the nature of an article 78 proceeding, and look to see whether the board action is arbitrary, capricious or unreasonable. (CPLR 103, subd. [c]; 7803, subd. 3; Matter of Strippoli v. Brickal, 21 A D 2d 365, affd. 16 N Y 2d 652; Matter of Balaban v. Rubin, 14 N Y 2d 193.)
The action of the Board of Education in following the policy declaration of the Board of Regents and the directives of the Commissioner of Education with respect to the educational inadequacy of racially imbalanced schools cannot be attacked. The court cannot evaluate the "sociological, psychological and educational assumptions relied on by the Commissioner ”, without a showing of arbitrariness. (Matter of Vetere v. Allen, 15 N Y 2d 259.)
While there is little question in the court’s mind that this plan as adopted by the school board is inconvenient and disruptive to the plaintiffs and other similarly situated, the court cannot substitute its judgment or view for the board, if some reasonable basis exists for the board’s conclusion and on which the decision of the board rests.
Plans, whereby attendance zones are changed to make the school available to children from noncontiguous areas, or to rezone attendance areas requiring pupils to attend other schools, or to reduce the average class size in a particular school, or increase the percentage of nonwhites attending a school, or where the plan requires bus transportation, or noninvolvement of all schools in the district, have been held to be constitutional and valid. (Matter of Van Blerkom v. Donovan, 15 N Y 2d 399; Matter of Addabbo v. Donovan, 22 A D 2d 383, affd. 16 N Y 2d 619.)
In changing the boundary lines of the attendance districts, which is the basic issue here, the board considered among other things, racial imbalance, low achievement in the Prospect Avenue School, the improvement of the cultural equality of education for all the children in the district, overcrowding in some classes in the other three schools due to reduction in class size in the Prospect Avenue School in an attempt to improve achievement levels, the necessity of busing, transportation costs, the consistence of the plan with the long-range construction and education plans under study, the necessity of wholesale transfer of teachers and other increased costs in the event the plan affected the entire district, and the superior educational oppor *952 t uni ties made available to all the children by reason of the pooling of the facilities and the consolidation of resources.
The criteria adopted by defendant board negate any finding that the action of the board was in any way arbitrary, capricious or unreasonable. The fact that some of the children will not go to a school nearest their homes, or that they will have to go to a more distant school does not make the plan illegal or arbitrary.
What the Appellate Division pointed out in Matter of Addabbo v. Donovan (22 A D 2d 383, supra) applies equally here. There two schools in the City of New York were paired. There, as here, no child was refused admission to any school in his attendance area which accommodated his particular grade, and no child was excluded from either school on the basis of race. The fact that here only the North-Prospect complex is involved does not invalidate the plan.
With respect to the allegation in the complaint that the Prospect Avenue School is inadequate, unsafe and unsuitable, it is pointed out that under the Education Law, all school buildings shall comply with such regulations as the Commissioner of Education shall adopt from time to time. (Education Law, § 409.) The building met the requirements of the Commissioner of Education, after an inspection by representatives of his office on July 26, 1968, “ with the exception of the basement rooms ” in particulars not specified, but the report indicated ‘ ‘ the remaining space in the basement can be utilized by the students. ’ ’ Under the Education Law, an annual fire inspection is required, with copies of the report filed with the School District and Commissioner of Education. There is nothing before the court to reflect any safety hazard. The State Building Construction Code does not apply to such school building.
No triable issue of fact has been raised by the pleadings and accompanying papers. Accordingly, for the reasons herein stated, the application to enjoin and restrain the Board of Education from proceeding with or carrying out the plan is denied. The action of the Board of Education is confirmed and the complaint must be and hereby is dismissed.